

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-7-1994

# United States of America v. Green

Precedential or Non-Precedential:

Docket 93-1605

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. Green" (1994). *1994 Decisions.* Paper 38.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/38

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 93-1605


UNITED STATES OF AMERICA

v.

MARK GREEN
a/k/a MARK WALLACE

MARK GREEN,
                              Appellant



On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 92-00649-01)



Argued:  March 28, 1994

Before:  SLOVITER, Chief Judge,
HUTCHINSON and ROTH Circuit Judges

(File: June 7, 1994  )


James N. Gross (Argued)
Philadelphia, PA  19107

        Counsel for Appellant

Michael R. Stiles
  United States Attorney
Walter S. Batty, Jr.
Michael P. Doss (Argued)
  Assistant United States Attorneys
Philadelphia, PA  19106

        Counsel for Appellee


1

OPINION OF THE COURT

SLOVITER, <u>Chief</u> <u>Judge</u>.

Appellant Mark Green was the subject of a nine-count superseding indictment. He pled guilty to seven counts of fraud-related charges, but proceeded to a trial before a jury on two counts, one charging him with making threats against a federal officer and the other charging him with making threats against the federal officer's family. He was found guilty on both charges. He appeals his conviction on the two counts and his sentence on all nine counts. In the most significant issue presented by this appeal, Green challenges the sufficiency of the evidence to support his conviction for threatening the family of a federal law enforcement officer. We have jurisdiction under 28 U.S.C. § 1291 (1988).

I.

In early 1992, United States Postal Inspector James Bannan was conducting an investigation of mail and credit card fraud involving Mark Green. In the spring of that year, Bannan attempted to serve a grand jury subpoena on Green, which Green refused to accept. During this period, there were two occasions on which Bannan arrested Green. On August 28, Bannan attempted to serve a grand jury subpoena on Green's mother, Patricia Green, at her place of employment, which she also refused to accept.

2

On August 31, Bannan, who had previously given his work phone number to Green, received a threat on his voice mail at that number. The message stated:

> Yeah, Bannan you better cut it the fuck out. I know where you live at motherfucker. Your family is in jeopardy, you better cut it out, or you're going to start a war you can't handle. I'm going to blow up that goddamn blue ass Camaro of yours, your [sic] better cut it the fuck out now. I'm coming for your family motherfucker.

Supp. App. at 1. Bannan then obtained an arrest warrant for Green, and told Green by telephone on September 4, and again on September 17, that a warrant had issued for his arrest in connection with the threat. On September 14, while Bannan was on foot, he spotted Green in a vehicle; Green slowed down, waved to Bannan and then sped away into traffic.

A grand jury returned a two count indictment on November 10, 1992 charging Green with threatening a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) (1988); threatening the family of a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(A) (1988); and causing, aiding and abetting these threats in violation of 18 U.S.C. § 2 (1988). On December 1, 1992, a superseding nine count indictment was returned against Green which added to the original two counts seven new counts of mail, bank and credit card fraud and possession and uttering a forged security, which formed the culmination of Bannan's investigation of Green.[1] Green pled

---

[1]In addition to the charges relating to the threat directed at Bannan and his family, Green was charged with two counts of bank fraud in violation of 18 U.S.C. § 1344 (Supp. IV 1992), two counts of credit card fraud in violation of 18 U.S.C. § 1029 (a)(2) and (a)(3) (1988), one count of mail fraud in violation of

guilty to the seven new charges, and stood trial on the two threat counts.

At trial, Clarence Webb, a close friend of Green, testified that it was he who left the threatening message on Bannan's machine at Green's request.[2] Webb testified that he knew nothing of Bannan's family when he placed the call. Although Webb stated that Green instructed him to threaten Bannan, he made no mention of Green's having suggested in any way that Webb threaten Bannan's family.

Webb also testified that one day while he and Green were driving together with Bannan's license plate number written on a piece of paper on the car's console, he saw Green speak with a friend, a bearded man driving a brown Mustang. Green told Webb he was trying to discover where Bannan lived. Webb testified that Green told him afterwards that he had been unable to find this out because the car was registered to a post office box.

Robert Bonds, a Philadelphia police officer and friend of Green, testified that in the fall of 1992, he met Green by chance in downtown Philadelphia. Green asked Bonds if he would run a check on a certain car to determine if it was stolen and to determine the address of the owner. Bonds, who the government noted is bearded, testified that he drove a brown Mustang and that he complied with the request. Records from the Data

_____

18 U.S.C. § 1341 (Supp. IV 1992), and two counts of uttering and possessing forged securities of an organization in violation of 18 U.S.C. § 513 (1988 & Supp. IV 1992).
[2]Apparently, Webb was not charged with any offense arising out of the incident.

4

Processing Unit of the Philadelphia Police Department show that Bannan's license plate number was checked on September 4, 1992. The records indicate that Bannan's license plate was registered to a fictitious name at a post office box.

At the close of the government's case, Green moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which was denied. During its closing argument the government stated to the jury, "[s]o his [Bannan's] license plate number was run three (3) days after the threat, and it was run at the request of Mark Green." App. at 3-101. After Green's counsel objected that the government had misstated the evidence, the court instructed the jury that their recollection, and not arguments of the parties, was controlling.

The jury returned verdicts of guilty on both counts. In addition to enhancements not challenged here, the district court enhanced Green's offense level by six levels because Green had taken steps to enforce the threat and three levels because the victims were a government official and his family. The district court then sentenced Green to 84 months imprisonment, five years of supervised release, and nine special assessments of $50.

II.

A.

Sufficiency of the Evidence

Green does not contest that Webb made the recorded threat to Bannan at Green's behest. In other words, he concedes that the evidence was sufficient to find him guilty as an aider and abetter of the crime of "threaten[ing] to assault . . . a

5

Federal law enforcement officer . . . with intent to impede, intimidate, or interfere with such . . . law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such . . . law enforcement officer on account of the performance of official duties."  18 U.S.C. § 115(a)(1)(B).

Instead, Green challenges the sufficiency of the evidence on his conviction on the separate charge of threatening the family of a federal officer.  This separate crime is covered by section 115(a)(1)(A) which makes it a crime to:
> threaten[] to assault, kidnap or murder a member of the immediate family of . . . a Federal law enforcement officer [with the same intent set forth above].

18 U.S.C. § 115(a)(1)(A).

As with the threat to Bannan, Green's conviction on the count for threatening Bannan's family was based on aiding and abetting under the federal statute, 18 U.S.C. § 2, which provides: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal," and "(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

We have noted before that "[i]n order to establish the offense of aiding and abetting, the Government must prove two elements: that the substantive crime has been committed and that

6

the defendant knew of the crime and attempted to facilitate it."
United States v. Frorup, 963 F.2d 41, 43 (3d Cir. 1992).

Green does not argue, nor indeed could he in light of the tape recording, that the threat communicated by Webb did not constitute the substantive offense falling within section 115(a)(1)(A). Instead Green's argument appears to be that Webb gratuitously added the reference to Bannan's family in the phone conversation, that Green never suggested that Webb threaten Bannan's family, and that Green neither knew of nor had any intent to threaten Bannan's family.

Thus the issues on which the parties focused in their briefs, including whether it is necessary that an actor must target a particular family member, know of the existence of the family member, or intend the threat to be communicated to the family member before there can be a violation of section 115(a)(1)(A), are not before us. Instead, we must simply decide whether there is enough evidence to find that Green aided and abetted or willfully caused the threat Webb made on members of Bannan's family.

The evidence that Green aided and abetted the threat to Bannan which served as the basis for Green's conviction under 18 U.S.C. § 115(a)(1)(B) included Webb's testimony that he made the threat in Green's bedroom, on Green's telephone, after Green dialed Bannan's number, and under Green's direction and supervision. However, he never testified that Green told him to communicate any threat to Bannan's family, and thus it is the conviction under 18 U.S.C. § 115(a)(1)(A) that is in question.

7

The government argues that Green set in motion the threat Webb made to Bannan, and that his request that Webb make a threat against a law enforcement officer also encompassed a threat against the family of the law enforcement officer. Whatever the scope of the doctrine of foreseeability in connection with aiding and abetting generally, compare view set out in Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.8(b), at 157 (1986) ("accomplice liability extends to acts of the principal in the first degree which were a 'natural and probable consequence' of the criminal scheme the accomplice encouraged or aided") with that at id. at 158 ("'natural and probable consequences' rule of accomplice liability . . . is inconsistent with more fundamental principles of our system of criminal law," the view adopted by the Model Penal Code), we believe it inapplicable here. There is no basis to find it foreseeable that Webb would have chosen unilaterally to expand his threat to include Bannan's family. More important, Congress made a threat to a law enforcement officer's family a separate crime than threat to the officer alone. We cannot assume, therefore, that Congress intended that evidence sufficient to prove aiding and abetting or willfully causing the threat to the officer would also automatically extend to the separate crime of threat to the officer's family. The rule of lenity applicable in criminal law, if not common sense, does not permit us to go as far as the government argues.

8

For these reasons, we will reverse Green's judgment of conviction under 18 U.S.C. § 115(a)(1)(A) for insufficient evidence.

B.

Evidentiary Rulings

Green makes a number of claims that would affect his conviction for the threat to Bannan. He challenges the admission of evidence concerning Bannan's prior arrests of Green, the attempted service of subpoenas on Green and his mother, and Bannan's testimony regarding Green's "flight" on seeing Bannan following the issuance of the arrest warrant. This issue does not require extended discussion. Bannan's prior arrests of Green were admitted under Fed. R. Evid. 404(b). We review the district court's rulings on the admission of evidence for abuse of discretion. See United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992).

Here, the evidence regarding Bannan's attempted service of subpoenas on Green and his mother, which they avoided, and Bannan's prior arrests of Green showed the nature of the prior contact between Bannan and Green and were relevant to establish Green's motive to induce him to threaten Bannan. This evidence was highly probative, and its admission was consistent with the principles outlined in Huddleston v. United States, 485 U.S. 681 (1988).

Nor did the district court abuse its discretion in admitting the evidence of Green's flight. We have held in the past that "[e]vidence of a defendant's flight after a crime has

9

been committed is admissible to prove his consciousness of guilt." United States v. Pungitore, 910 F.2d 1084, 1151 (3d Cir. 1990), cert. denied, 500 U.S. 915 (1991). Here, there was evidence that Bannan had told Green that a warrant for his arrest had issued in connection with the telephone threats. Although Green's flight occurred some two weeks after the threats, he fled only after spotting Bannan and acknowledging his presence. Therefore this evidence, like Bannan's testimony regarding the prior arrests and subpoenas, was also properly admitted under Huddleston.

## C.

### The Government's Closing

Green argues that the prosecutor intentionally misstated the evidence during his closing argument when he stated that Bannan's license plate was run[3] at Green's request three days after the threats, and that the district court abused its discretion in failing to admonish the government.

"[T]he appropriate inquiry [in deciding whether a prosecutor's remarks in summation require reversal] is whether such remarks, in the context of the entire trial, were sufficiently prejudicial to violate defendant's due process rights." United States v. Scarfo, 685 F.2d 842, 849 (3d Cir. 1982), cert. denied, 459 U.S. 1170 (1983). As we recently stated, "[t]he prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences

---

[3]Presumably, to "run" a license plate means to have it checked for identification of the owner.

10

that can be drawn from that evidence."  United States v. Werme, 939 F.2d 108, 117 (3d Cir. 1991), cert. denied, 112 S. Ct. 1165 (1992).

Rather than a misstatement of the evidence presented at trial, the prosecutor's remarks in this case represented a permissible argument based on reasonable inferences which the jury could draw from the evidence at trial.  In any event, the court sufficiently handled defendant's objection by instructing the jury, immediately after the defense counsel's objection as follows:

> Ladies and gentlemen -- your recollection -- will control as to any basis, as to any question as to what the evidence shows or does not show.  Counsel may make argument, but it is your recollection that controls. It's neither what the . . . Government's counsel or the Defendant's counsel tells you about the evidence.

App. at 3-101.

### D.

### Sentencing

Finally, Green challenges the sentence imposed by the district court.  Green first argues that the district court erred in enhancing his offense level by six based on his conduct "evidencing an intent to carry out such threat."  United States Sentencing Commission, Guidelines Manual, §2A6.1(b)(1) (Nov. 1992).  We review the district court's findings of fact in this regard for clear error only.  See United States v. Miele, 989 F.2d 659, 663 (3d Cir. 1993).

11

Here, as we detailed above, the evidence presented at trial amply supported the inference that Green requested that his friend, Officer Bonds, run a check on Bannan's license plate. This request certainly constitutes conduct evidencing an intent to carry out the August 31 threats to Bannan and his family. This finding is not clearly erroneous.

Next, Green argues that the court erred in enhancing his offense level by three based on the intended victim's status as a law enforcement agent.  Green argues that because the statute under which he was charged specifically contemplates that the victim be a law enforcement officer (or other federal official), an enhancement based on this criterion constitutes double punishment.

Section 3A1.2(a) of the Sentencing Guidelines mandates a three level increase where the victim is a government officer or employee or a member of his or her family.  Section 2A6.1 concerning "Threatening Communications" contains no provision enhancing the sentence where the victim is a government official or the member of her family.  Thus, the §3A1.2 enhancement as applied to the base offense level calculated under §2A6.1 involves no double counting.

This conclusion is supported by the recent decision in United States v. Pacione, 950 F.2d 1348 (7th Cir. 1991), cert. denied, 112 S. Ct. 3054 (1992), where the court directly addressed, and rejected, the very argument raised by Green here. We agree with that court that because the victim's "official status was not . . . incorporated into the guidelines section

12

[2A6.1] which determined [defendant's] base offense level; the §3A1.2 adjustment was necessary in order to reflect all the elements of [defendant's] offense." Id. at 1356.

### III.

For the reasons set forth above, the judgment of conviction of Mark Green as to 18 U.S.C. § 115(a)(1)(B) will be affirmed, the judgment of conviction as to 18 U.S.C. §115(a)(1)(A) will be reversed, and the matter will be remanded to the district court for resentencing.