PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2024
_____

UNITED STATES OF AMERICA

v.

BALDWIN CENTENO,
Appellant
_____

No. 14-2690
_____

UNITED STATES OF AMERICA

v.

SANTOS CENTENO

a/k/a

HECTOR CRUZ,

Santos Centeno,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
(D.C. Nos. 2-12-cr-00634-001, 2-12-cr-00634-002)
District Judge:  Honorable Juan R. Sanchez
_____

Argued: June 3, 2015
_____

Before:  FISHER, JORDAN, and SHWARTZ, Circuit Judges.

(Filed: July 14, 2015)


Brett G. Sweitzer, Esq. [ARGUED]
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19016

Counsel for Appellant (No. 14-2024)

Elizabeth Plasser Kelly, Esq. [ARGUED]
256 Eagleview Boulevard
P.O. Box 155
Exton, PA 19341

Counsel for Appellant (No. 14-2690)

Denise S. Wolf, Esq. [ARGUED]
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

      Counsel for Appellee

_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

      Baldwin and Santos Centeno appeal their convictions and sentences arising from violent assaults at the Independence National Historical Park in Philadelphia.[1] Each challenges the sufficiency of the evidence supporting his convictions. In addition, Baldwin argues that his conviction must be reversed due to a constructive amendment of the Indictment and, in any event, that his sentence must be vacated due to the District Court's failure to personally address him before imposing its sentence. Finally, each contends that one conviction violates the Double Jeopardy Clause and must be vacated. We conclude that the evidence is sufficient to support the convictions but, with respect to Baldwin, the Government's rebuttal summation advocated a

_____

      [1] For convenience, we will refer to each defendant by his first name.

3

basis for conviction that was not charged in the Indictment and resulted in a constructive amendment, requiring that we vacate his convictions and remand for a new trial. As to Santos, we agree with the parties that one of his assault convictions violated the Double Jeopardy Clause so we will vacate that single conviction and remand for resentencing.

I

The charges arise from incidents that occurred on June 16 and 20, 2012. Around 1:00 a.m. on June 16, 2012, Ashish Lokhande was found lying in a pool of blood on the sidewalk in Independence National Historical Park. Lokhande could not recall being assaulted or ever seeing either Baldwin or Santos. He remembered only having been to work that day and waking up in the hospital days later. Lokhande testified that his "normal routine" for a Friday evening was to drive his car into Philadelphia to go salsa dancing and that he typically parked his car around Fifth and Market Streets, near Independence National Historical Park.

Christopher Robles was with Baldwin and Santos on the night of the assault. Robles testified that he, Baldwin, and Santos drove from Santos's apartment in Camden, New Jersey into Philadelphia, using Baldwin's four-door sedan with a black hood that did not match the color of the rest of the car. After they parked, Santos and Baldwin exited the car and Robles remained in the backseat.[2]

---

[2] Robles testified that he stayed in the car because he was too "drunk" to walk. App. 446.

4

Shortly thereafter, three men joined Baldwin and Santos. Robles testified that Baldwin and Santos leaned against the car while the three men paced back and forth along the sidewalk. The group talked, drank, and laughed. Eventually, a man approached Baldwin and Santos and asked if they could help him locate his car.[3] Robles testified that he then saw the man "being attacked," App. 431, which included being hit and punched.

Robles testified that Baldwin and Santos were "around" the victim, App. 432, 435, and were "in the group of five that attacked" him, App. 444. Robles further admitted that "any" or "all" "of [the] five men" could have attacked the victim, that he did not see who struck him, App. 443-44, and that he could not say whether Baldwin or Santos were "looking or hitting," App. 508-09.

After the attack, Baldwin, Santos, and the three other men yelled "let's go" and quickly "ran" to Baldwin's car. App. 448, 451, 455. As they drove away, Robles saw the victim lying on the ground, bleeding. Video surveillance tape from a nearby building showed a gold or tan Ford Taurus with a black hood leaving the scene of the assault at approximately 12:50 a.m. on June 16, 2012. According to Robles, Baldwin drove the car back to Camden. Cell tower records showed that Lokhande's cell phone was in Camden hours later.

---

[3] About two hours before the assault, Lokhande's car was towed from a parking spot near where Lokhande was found.

Four days later, on June 20, 2012, Santos and Baldwin returned to Independence National Historical Park and encountered Joseph Crumbock and his wife, D.W. Around 10:15 p.m., Crumbock and D.W. were walking in the same location where Lokhande had been assaulted. Crumbock and his wife saw "four guys standing around [a] car," App. 515, "just staring [them] down," App. 559. After they walked approximately ten to fifteen feet past the men, Santos "came running at" Crumbock, App. 517, "calling [him] names," and pushing and punching him. App. 518. Crumbock testified that the other three men came over and "surrounded" him and that "two of them jumped on [his] back" and "punched [him] in the face." App. 519-20. Crumbock's cell phone and wallet were stolen during the attack.

While on the ground, Crumbock saw Santos "standing over" D.W., who "was screaming on the ground." App. 520. Crumbock recalled that his wife's face "was all bloody" and that she was "crying and screaming," App. 521, as Santos attempted to "drag[] her across the sidewalk" using the strap on her pocketbook, App. 524-25. D.W. testified that she fell to the ground after Santos punched her in the mouth.[4]

A U.S. Park Ranger heard D.W.'s screams, exited his station, and saw "a man dragging a woman . . . in the middle of [the] Street." App. 651. He yelled "stop, police," and ran after the man, App. 652, who "got into the rear passenger"

---

[4] Crumbock identified Santos both in a photo array and during trial as the man who attacked him and D.W. Because of a suppression ruling, D.W. did not make an in-court identification, but the Government published to the jury the photo array indicating D.W. identified Santos as her attacker.

6

side of a gold or tan four-door 2003 Ford Taurus with a black hood later determined to be registered to the mother of Baldwin's child, App. 652, 656, 710-11, 716-18.[5] Two days later, law enforcement stopped the car in Camden with Baldwin, Santos, and Robles inside.

A grand jury returned a five-count Indictment against the Centenos. For the June 16, 2012 incident, the Indictment charged the Centenos with: (1) knowingly assaulting, and aiding and abetting assault, "resulting in serious bodily injury" to Lokhande in violation of 18 U.S.C. §§ 113(a)(6), 2 (Count One); (2) knowingly assaulting, and aiding and abetting assault, by "striking, beating or wounding" Lokhande in violation of 18 U.S.C. §§ 113(a)(4), 2 (Count Two); and (3) knowingly taking, and aiding and abetting the taking of, property belonging to Lokhande by force and violence and intimidation in violation of 18 U.S.C. §§ 2111, 2 (Count Three). App. 30-32. As to the June 20, 2012 incident, the

---

[5] Around this time, Chelsea Schmotzer was sitting in the driver's seat of her parked car at an intersection near Independence National Historical Park. Schmotzer testified that she saw a gold car pull up behind her and four men exit the car. The men "split up" in different directions, App. 583-84, and, approximately ten to twenty minutes later, Schmotzer heard a woman "screaming for help, clearly very distressed," App. 584-85. Schmotzer then saw the men "running towards [her] car" and one of the men, whom she identified as Baldwin, ran "right by" her side mirror. App. 585-86. Schmotzer also testified that she made eye contact with Baldwin and that he resembled one of the men who exited the gold car minutes earlier.

7

Indictment charged the Centenos with: (1) knowingly assaulting, and aiding and abetting assault, "by striking, beating [or] wounding" Crumbock and D.W. in violation of 18 U.S.C. §§ 113(a)(4), 2 (Count Four); and (2) taking, and aiding and abetting the taking of, property belonging to Crumbock and D.W. "by force and violence[, or] by intimidation" in violation of 18 U.S.C. §§ 2111, 2 (Count Five).  App. 33-34.

The Centenos proceeded to trial.  In his summation, Baldwin's counsel argued that there was no evidence that Baldwin actually assaulted Lokhande, or that he was even "driving the car that night."  App. 908.  His counsel also argued that "get[ting] in your car" and "leaving quickly" do not constitute aiding and abetting.  App. 913.  In its rebuttal summation, the Government told the jury:

> Defense counsel mentioned aiding and abetting, the Judge is going to instruct you on the law on this point.  You can still be guilty if you don't throw a punch.  Not the first punch, second punch, it doesn't matter if you never touch the guy, you can still be guilty as long as you're supporting and participating in some way.  You cannot be part of a group that commits a crime and then say I didn't touch him; not me.  That's not how the law works.
>
> So . . . any one of these points I'm about to go over, you can find [Baldwin] guilty. . . .  [Y]ou can find him guilty because he was part of [the] group that knowingly, physically went around

8

Mr. Lokhande . . . if he's around that group preventing a victim from escaping, that's guilty.

If he was part of a group – if his physical presence was supporting the other assailants, that is guilty.

If he was a getaway driver, driving his car away from a crime scene after the victim fell to the ground and he knowingly is driving the car, that alone, he's guilty, any one of these.

App. 920.

Defense counsel immediately objected, contending that the Government's comments amounted to an "accessory after the fact" theory that had not been charged in the Indictment. App. 923. The District Court overruled the objection, but informed defense counsel: "[I]f you want a specific curative instruction I will be happy to do that if you propose language." App. 924. Defense counsel suggested: "I just figure the jury should know that unless there's evidence that the car was used in the assault, like he drove it into the victim or something like that, there's – getting in the car and leaving the scene is . . . [in]sufficient to show aiding and abetting, robbery, and assault." App. 929. The District Court rejected defense counsel's suggested instruction, stating "I think the model jury instruction that I'm giving as supplemented with your request, adequately addresses both side's concern." App. 929. It instructed the jurors as follows with respect to aiding and abetting:

In order to find a defendant guilty of an offense because he aided and abetted the principal in committing that offense, you must find that the [G]overnment proved beyond a reasonable doubt each of the following four elements: One, that [t]he principal committed the offense charged by committing each of the elements of the offenses charged, as I have explained those elements to you in my instructions. The principal need not have been charged with, or found guilty of, the offense, however, as long as you find that the [G]overnment proved beyond a reasonable doubt that he committed the offense. Second, that the defendant knew that the offense charged was going to be committed or was being committed by the principal. Third, that the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the specific offense charged and with the intent that the principal commit that specific offense. And fourth, that the defendants did in some way aid, assist, facilitate, or encourage the principal to commit the offense. The defendant's acts need not themselves be against the law.

. . . [E]vidence that the defendant merely associated with persons involved in a criminal venture, or was merely present, or was merely a knowing spectator during the commission of the offense is not enough for you to find him guilty as an aider and abettor. An individual has no

10

legal obligation or duty to report a crime he witnesses.

. . . The [G]overnment must prove, beyond a reasonable doubt, that the defendant in some way participated in the offense committed by the principal as something that the defendant wished to bring about and to make succeed.

App. 962-64.

Before excusing the jurors for deliberation, the District Court provided the following limiting instruction concerning the similarities between the June 16 and June 20, 2012 incidents:

Now, you have heard testimony that the defendants participated in assaults and robberies on June 16th and June 20th. In determining whether a defendant committed the offense charged on one of the nights in question, you may consider evidence regarding the events on the other night in question for the limited purpose of deciding whether a defendant: (1) acted with a method of operation as evidenced by a unique pattern or did not commit the acts for which he is on trial by accident or mistake or is the person who committed the crime charged in the indictment. Of course, it is for you to determine whether you believe this evidence, and if you believe it, whether you accept it for those purposes I have just mentioned. You may give it such weight as you

11

feel it deserves to receive, but only for the limited purpose that I described to you.

For example, you may not conclude that simply because a defendant committed certain acts on June 16th, he must also have committed certain acts on June 20th and vice versa. You must still determine whether there is proof beyond a reasonable doubt that the defendants committed each charged offense on June 16th and each charged offense on June 20th. Similarly, you may not consider evidence of acts committed on one night as evidence of a defendant's bad character or propensity to commit the crimes charged on the other night. . . .

App. 951-52.[6]

Baldwin was convicted of the two assault charges related to the June 16, 2012 incident but was acquitted of the robbery charge related to the June 16, 2012 incident and all charges related to the June 20, 2012 incident. Santos was convicted of all assault charges and the June 20, 2012 robbery but was acquitted of the June 16, 2012 robbery.

During Baldwin's sentencing hearing, the District Court asked Baldwin's counsel: "Does your client wish to speak to the court?" App. 1102-03. Baldwin's counsel answered "No," and the District Court responded, "He has a right to speak to the court. He doesn't want to speak to the court?" App. 1103. Baldwin's counsel answered, "Not at

---

[6] The parties consented to this limiting instruction.

12

this time, Your Honor." Id. The District Court did not directly address Baldwin. Baldwin received a sentence of fifty-seven months' imprisonment. Santos received a sentence of 188 months' imprisonment. Both appeal their convictions and sentences.

II[7]

A

The Centenos challenge the sufficiency of the evidence supporting their convictions. In reviewing this claim, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 424-25 (3d Cir. 2013) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This is a "particularly deferential standard of review." United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998). "We do not weigh evidence or determine the credibility of witnesses. . . ." United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003) (internal quotation marks omitted). Rather, we view the evidence as a whole and "ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt." Caraballo-Rodriguez, 726 F.3d at 430 (internal quotation marks omitted). Thus, "a reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively

---

[7] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

13

appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam) (internal quotation marks omitted).

We will first review the elements of the offenses and then examine the record to see if there is evidence from which a rational juror could find that the elements were proven. Each defendant was convicted of assault in violation of 18 U.S.C. §§ 113(a)(6) and (a)(4), and 2. To prove assault resulting in serious bodily injury in violation of § 113(a)(6), the Government must prove: (1) the defendant assaulted another person; (2) the assault caused the other person to suffer serious bodily injury; and (3) the assault took place within the special maritime and territorial jurisdiction of the United States.[8] 18 U.S.C. § 113(a)(6). To prove assault "by striking, beating, or wounding" in violation of § 113(a)(4), the Government must prove that, while within the special

---

[8] Two appellate courts have indicated that a violation of § 113(a)(6) also requires proof that the assault occurred by "intentionally striking" the victim. United States v. Davis, 726 F.3d 357, 360 (2d Cir. 2013); United States v. Felix, 996 F.2d 203, 207 (8th Cir. 1993) (holding that the difference between what is now designated as § 113(a)(4) and (a)(6) is the degree of injury that results from the assault, suggesting striking is an element of both offenses). But see, e.g., United States v. Bruce, 458 F.3d 1157, 1162 n.1 (10th Cir. 2006) (stating that assault resulting in serious bodily injury does not require proof of physical touching). We need not resolve whether striking is an element because the jury was instructed that it was and the evidence shows that Lokhande, Crumbock, and D.W. were struck.

maritime and territorial jurisdiction of the United States, the defendant assaulted the victim while making "some form of physical contact." United States v. Herron, 539 F.3d 881, 886 (8th Cir. 2008); see also United States v. Bruce, 458 F.3d 1157, 1162 n.1 (10th Cir. 2006) (stating that assault by striking requires physical touching).

With respect to "aiding and abetting" under 18 U.S.C. § 2, the Government must prove: "(1) that another committed a substantive offense; and (2) the one charged with aiding and abetting knew of the commission of the substantive offense and acted to facilitate it." United States v. Mercado, 610 F.3d 841, 846 (3d Cir. 2010). Additionally, we require proof that the defendant had the specific intent to facilitate the crime. Id. "One can aid or abet another through use of words or actions to promote the success of the illegal venture." Id. Indeed, "only some affirmative participation which at least encourages the principal offender to commit the offense" is required. United States v. Frorup, 963 F.2d 41, 43 (3d Cir. 1992) (internal quotation marks omitted). There must, however, be "more than associat[ion] with individuals involved in the criminal venture." United States v. Soto, 539 F.3d 191, 194 (3d Cir. 2008) (internal quotation marks omitted). "Neither mere presence at the scene of the crime nor mere knowledge of the crime is sufficient to support a conviction." Mercado, 610 F.3d at 846. A defendant is not guilty of aiding and abetting an offense unless the defendant "did something to forward the crime and . . . was a participant rather than merely a knowing spectator." United States v. Dixon, 658 F.2d 181, 189 (3d Cir. 1981) (parentheses and internal quotation marks omitted); see also Rosemond v. United States, 134 S. Ct. 1240, 1248 (2014) ("To aid and abet a crime, a defendant must not just in some sort associate

15

himself with the venture, but also participate in it as in something that he wishes to bring about and seek by his action to make it succeed." (internal quotation marks omitted)).

Turning to the events of June 16, there is no dispute that Lokhande was assaulted by striking on property within the special territorial jurisdiction of the United States and that he sustained serious injuries. The only issue is whether there was sufficient evidence from which a rational juror could find that the Centenos aided and abetted the assault. We conclude that, when the Centenos' actions before, during and after the assault are viewed in a light most favorable to the Government, the evidence is sufficient to sustain their convictions.

Robles testified that the Centenos drove to Philadelphia, exited the car, and were met by three other men with whom they were friendly. While they socialized, Lokhande approached the Centenos and asked them for help locating his car, after which Lokhande was immediately attacked. This suggests that the Centenos were closer to Lokhande than the other men when the attack began. Robles did not say who punched Lokhande nor did he say that the Centenos helped the victim. Rather, he testified that Baldwin and Santos were "around" Lokhande during the attack, App. 432, and they were "part of" the five-man group that attacked him. App. 448. From this, a rational juror could infer at a minimum that their physical presence was intimidating, prohibited the victim's escape, or encouraged their friends to proceed in the assault and thus they were involved in the attack. Cf. United States v. Barber, 429 F.2d 1394, 1396–97 (3d Cir. 1970) (reversing defendant's aiding-and-abetting-

16

assault conviction where evidence suggested only that defendant was part of the 15-man group that confronted the FBI agents "before the outbreak of violence" and did not indicate whether defendant was acquainted with the other group members beforehand).

The Centenos' conduct following the attack further supports a reasonable inference that they were participants. The Centenos fled the scene in the same car with the other three men immediately after the attack, and there is no evidence that they objected to the other three men leaving with them in Baldwin's car. Such flight with the other actors could reasonably be viewed as evidence of both approval of the conduct and consciousness of guilt. United States v. Green, 25 F.3d 206, 210 (3d Cir. 1994); Barber, 429 F.2d at 1397 n.4 (observing that "[f]light from the scene of the crime with the actual perpetrators has been said to justify" an inference of "participation in the wrongdoing"). Cell phone records also showed that Lokhande's cell phone was near the Centenos' home in Camden hours after the attack, a fact a rational juror might find evinces the Centenos' participation in the assault.

Lastly, four days later, the Centenos traveled together in the same car to approximately the same location, where Santos assaulted and robbed Crumbock and D.W., and Baldwin was observed fleeing from the area of the assault. From this evidence, a rational juror could find that the Centenos "acted with a method of operation as evidenced by a unique pattern" App. 952, and that it was less likely the Centenos were "merely . . . knowing spectator[s]" on June

17

16.[9]  Dixon, 658 F.2d at 189 (internal quotation marks omitted).

Taken together under our "highly deferential" standard of review, Caraballo-Rodriguez, 726 F.3d at 430, these facts provide a basis for a rational juror to conclude that the Centenos were involved in the attack.  See generally Mercado, 610 F.3d at 846 (reiterating that "[a]n aiding and abetting conviction can be supported solely with circumstantial evidence as long as there is a logical and convincing connection between the facts established and the conclusion inferred" (internal quotation marks omitted)). Therefore, there is sufficient evidence to support their convictions on Counts One and Two.

We next examine the sufficiency of the evidence supporting Santos's convictions arising from the June 20, 2012 assault by striking (Count Four) and robbery (Count Five).  Again, there is no dispute that an assault and robbery occurred within the special territorial jurisdiction of the United States.  The only issue is whether there is sufficient evidence to support the jury's verdict that Santos played a

---

[9] Baldwin "affirmatively challenges the Rule 404(b)" ruling only should the Court "view the June 20 evidence as integral to any conclusion that the evidence was sufficient as to" June 16, see Baldwin Br. 33 & 34 n.13, but neither he nor Santos raises a Fed. R. Evid. 404(b) violation as among the issues in this appeal, see id. at 3; Santos Br. 3.  Because these issues were "not squarely argued" and were at most "raised in passing (such as, in a footnote)," they are waived.  See John Wyeth & Brother Ltd. v. Cigna Int'l Corp., 119 F. 3d 1070, 1076 n.6 (3d Cir. 1997).

role in these events. We conclude the evidence is sufficient. Crumbock and D.W. described the June 20 events in detail and identified Santos as their attacker either on the witness stand, in a photo array, or both. D.W. specifically testified that Santos punched her, and Crumbock testified that Santos punched him and "dragg[ed] [D.W.] across the sidewalk" using the strap of her pocketbook. App. 524. A U.S. Park Ranger saw the man who dragged D.W. into the middle of the street, enter the rear passenger side of a car later shown to be registered to the mother of Baldwin's child. Crumbock described the getaway car as an older model four-door car with a roof of a different color than the rest of the car, a description largely consistent with the gold four-door 2003 Ford Taurus with a black hood in which the Centenos were found two days later. Thus, the evidence against Santos, viewed as a whole in the light most favorable to the Government, was "strong enough for a rational trier of fact to find guilt beyond a reasonable doubt." Caraballo-Rodriguez, 726 F.3d at 430 (internal quotation marks omitted).

Crumbock also testified that his wallet and cell phone were stolen. Santos makes no specific argument as to his robbery conviction. He pins his entire sufficiency challenge on D.W.'s apparently erroneous description of her assailant as having a lazy eye, and on Crumbock's description of the getaway car as "maybe like a Lincoln, I'm not sure" and his statement that he "believe[d]" it was the car's roof that had a different color than the rest of the car (as opposed to the hood). App. 526. The jury's verdict demonstrates that it did not find these minor differences consequential, which is wholly rational in light of Crumbock and D.W.'s identification of Santos as the assailant, the U.S. Park Ranger's corroborative testimony about the man he saw

"drag[] a woman" in the street, App. 651, and escape in a car registered to the mother of Baldwin's child, Schmotzer's testimony that she heard a woman scream and saw Baldwin running in the street after having seen several men get out of a gold car ten to twenty minutes earlier, and the fact that the Centenos and Robles were found in the same car two days after the assault. For these reasons, the evidence is sufficient to sustain Santos's convictions on Counts Four and Five and we will affirm his conviction on these counts.

B

We next address Baldwin's constructive amendment argument. Although the evidence is sufficient to support Baldwin's convictions on Counts One and Two for the June 16 assault, we cannot be sure that the jury did not rely on an uncharged theory of liability for its verdict. The Government told the jury that it could convict Baldwin of aiding and abetting the June 16 assault based solely on his role as the driver of the getaway car. Baldwin asserts that this amounted to a constructive amendment of the Indictment because it permitted the jury to convict him of aiding and abetting based on facts that would support a conviction for the offense of accessory after the fact, which was not charged.[10] We agree.

---

[10] Baldwin preserved his objection and thus we review for harmless error. Neder v. United States, 527 U.S. 1, 7 (1999). We note, however, that because "[a] constructive amendment of the charges against a defendant deprives the defendant of his/her substantial right to be tried only on charges presented in an indictment returned by a grand jury," United States v. McKee, 506 F.3d 225, 229 (3d Cir. 2007) (internal quotation marks and citation omitted), constructive

20

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. "Because of this constitutional guarantee, a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." United States v. Vosburgh, 602 F.3d 512, 531 (3d Cir. 2010) (internal quotation marks and citation omitted). "From this rule comes the general prohibition against constructive amendments." Id. A constructive amendment occurs when,

> in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged.

United States v. Daraio, 445 F.3d 253, 259-60 (3d Cir. 2006). Put differently, "[a]n indictment is constructively amended when evidence, arguments, or the district court's jury instructions effectively amends the indictment by broadening the possible bases for conviction from that which appeared in the indictment." United States v. McKee, 506 F.3d 225, 229

---

amendments "are per se reversible under harmless error review," United States v. Syme, 276 F.3d 131, 136 (3d Cir. 2002). In addition, because a constructive amendment claim presents a question of law, we exercise plenary review. United States v. Vosburgh, 602 F.3d 512, 531 (3d Cir. 2010).

(3d Cir. 2007) (internal quotation marks, alteration, and citation omitted).

To determine whether the Government constructively amended the Indictment here, we consider whether: (1) through its summation, the Government effectively "modif[ied] essential terms of" the aiding and abetting assault charges against Baldwin, Daraio, 445 F.3d at 259; and (2) in so doing, "broaden[ed] the possible bases for conviction from that which appeared in the [I]ndictment," McKee, 506 F.3d at 229 (internal quotation marks omitted).

In its rebuttal summation, the Government noted that defense counsel had "mentioned aiding and abetting" with respect to Baldwin. App. 920. It then told the jury with respect to the assault charge:

> If he was a getaway driver, driving his car away from a crime scene after the victim fell to the ground and he knowingly is driving the car, that alone, he's guilty, any one of these.

App. 920. In telling the jury that one can aid and abet an assault after the blows were struck, the Government effectively "modif[ied] essential terms of the" charges against Baldwin. Daraio, 445 F.3d at 259. This is because the assault offense was completed by the time Baldwin entered the car.

An offense is completed "when each element of the offense has occurred." United States v. Yashar, 166 F.3d 873, 875 (7th Cir. 1999). At least as the jury was instructed here, assault requires proof of an "intentionally striking" of

22

the victim, App. 957-59; see also United States v. Davis, 726 F.3d 357, 360 (2d Cir. 2013), or making "some form of physical contact" with the victim, Herron, 539 F.3d at 886. An assault continues for as long as the striking occurs, but once the contact is done, the crime is complete. Since aiding and abetting requires a deed that facilitates the completion of a crime, any such acts must logically occur before the crime is completed. Indeed, "where the defendant merely provide[s] assistance to the perpetrator of the actual crime after its completion—and nothing more—a conviction for aiding and abetting the principal regarding that crime cannot stand." United States v. Barlow, 470 F.2d 1245, 1249 (D.C. Cir. 1972); see also United States v. Figueroa-Cartagena, 612 F.3d 69, 74 (1st Cir. 2010) ("[A] person cannot be found guilty of aiding and abetting a crime that already has been committed." (internal quotation marks and citation omitted)).

Here, the Government argued to the jury that it could find Baldwin guilty of aiding and abetting the assault of Lokhande based solely on his role as the "getaway driver, driving his car away from a crime scene." App. 920. By the time Baldwin and Santos drove away, however, Lokhande had already been physically attacked and the assault had been completed. The Government's assertion that the jury could find Baldwin guilty of aiding and abetting based only on helping Santos and the others flee the scene of the crime was therefore incorrect. Indeed, as Baldwin points out, such conduct is consistent with the separate crime of being an accessory after the fact, a crime that was not charged. See United States v. Salamanca, 990 F.2d 629, 637-40 (D.C. Cir. 1993) (holding that flight from the scene of an assault along with the principal does not alone constitute aiding and abetting but may be "strong evidence" of being an accessory

23

after the fact); see also Figueroa-Cartagena, 612 F.3d at 73-74 (stating that aiding and abetting and being an accessory after the fact are "separate offense[s] with separate elements and [] separate punishment[s]"); 18 U.S.C. § 3 (defining the crime of being an accessory after the fact to include assisting an offender, "knowing that an offense . . . has been committed"). Thus, insofar as the Government's rebuttal summation suggested to the jury that it could find Baldwin guilty of aiding and abetting for conduct that amounts to being an accessory after the fact, it "modif[ied] essential terms of" the Indictment by suggesting that the jury could convict Baldwin for an uncharged crime. Daraio, 445 F.3d at 259. Baldwin was not indicted for being an accessory after the fact, and "there is a substantial likelihood that the jury may have convicted [Baldwin] for an offense differing from the offense the [I]ndictment returned by the grand jury actually charged." Id. at 260. The Government's rebuttal summation "broaden[ed] the possible bases for conviction from that which appeared in the [I]ndictment" and thereby constructively amended it. McKee, 506 F.3d at 229.

Not every stray remark in an argument or misstatement in an instruction necessarily results in a constructive amendment. Indeed, such remarks may be cured with limiting or corrected instructions. See United States v. Foster, 507 F.3d 233, 242-43 (4th Cir. 2007) (declining to conclude that the Government had constructively amended the indictment when, during rebuttal, it suggested that the jury could determine the size of the charged conspiracy, in part because the district court instructed the jury in a manner consistent with the indictment, which charged a conspiracy of a specific size). Here, the "jury instructions as a whole" did not make clear that finding that Baldwin had acted as the

getaway driver alone was insufficient to prove that he had aided and abetted the assault. Daraio, 445 F.3d at 260-61 (considering whether, notwithstanding the possibility that the evidence presented by the Government had constructively amended the indictment, the jury instructions "[o]verall . . . properly focused the jury" on the defendant's "conduct as charged in the indictment"). Because the instructions did not "ensure[] that the jury would convict [Baldwin], if at all, for a crime based on conduct charged in the [I]ndictment," id. at 260, we must vacate Baldwin's convictions on Counts One and Two and remand for a new trial on those counts.[11] See United States v. Syme, 276 F.3d 131, 156 (3d Cir. 2002).

C

Finally, we consider Santos's challenge to his conviction and sentence on Count Two, assault by striking in violation of 18 U.S.C. § 113(a)(4), based upon the Double Jeopardy Clause. Santos asserts that his conviction and sentence on this count violates the Double Jeopardy Clause because assault by striking is a lesser-included offense of

---

[11] Because we are ordering a new trial, we need not address Baldwin's arguments about his sentence. We do, however, remind the District Court of its obligation to address every defendant personally and invite him or her to address the Court before imposing sentence. Fed. R. Crim. P. 32(i)(4)(A)(ii). Asking counsel if his or her client would like to speak at sentencing does not satisfy Rule 32's mandate that a sentencing judge directly address the defendant. See, e.g., United States v. Adams, 252 F.3d 276, 279 (3d Cir. 2001).

Count One, assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6).[12]

Under the Double Jeopardy Clause, courts may not impose "greater punishment than the legislature intended to impose for a single offense." United States v. Miller, 527 F.3d 54, 70 (3d Cir. 2008) (internal quotation marks omitted). "For the purpose of double jeopardy analysis, two offenses are the same if one is a lesser-included offense of the other under the 'same-elements' (or Blockburger) test." Id. at 71; see generally Blockburger v. United States, 284 U.S. 299, 304 (1932). The key inquiry under the "same-elements" or "Blockburger" test is "whether each offense contains an element not contained in the other; if not, they are the same offen[s]e." Miller, 527 F.3d at 71 (internal quotation marks omitted).

The Government concedes error on this issue because of the way the jury instructions were phrased. With respect to assault by striking, the jury instructions required a finding of "intentionally striking, beating, or wounding," and with respect to assault resulting in serious bodily injury, the jury instructions required a finding of "intentionally striking or wounding" resulting in serious bodily injury. App. 957-59. Thus, under these instructions, the only difference between the two offenses is that one required proof of serious bodily injury and the other did not, making the latter a lesser included offense. Thus, we will vacate Santos's sentence on

---

[12] Santos concedes that he did not preserve this issue for appeal and that it is subject to plain error review. United States v. Miller, 527 F.3d 54, 70 (3d Cir. 2008).

Count Two and remand so the District Court can merge the two convictions on Counts One and Two and resentence him. United States v. Tann, 577 F.3d 533, 543 (3d Cir. 2009).

## III

For the foregoing reasons, we will: (1) affirm Santos's convictions on Counts One, Four, and Five, and vacate and remand for resentencing as to Counts One and Two; and (2) vacate Baldwin's convictions on Counts One and Two and remand for a new trial.