**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2263

_____

UNITED STATES OF AMERICA

v.

ALAN WOMACK,
a/k/a "Mal,"
a/k/a "Jamal,"
a/k/a "Kevin Smaller,"
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:16-cr-00218-13)
U.S. District Judge:  Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 7, 2025
_____

Before: SHWARTZ, FREEMAN, and RENDELL, <u>Circuit Judges</u>.

(Filed: July 8, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SHWARTZ, Circuit Judge.

Alan Womack appeals the District Court's order denying his motion to suppress and his conviction for conspiracy to commit money laundering. For the following reasons, we will affirm.

I[1]

Womack was a member of a drug trafficking organization that transported and sold marijuana from 2005 to 2016. Among other things, the organization stored marijuana at a home in Philadelphia. On one occasion, police received a 911 call reporting that five men were moving items through the home's basement window. Officers arrived at the house, saw Dalion Baskerville and Womack standing near the property, and detained them.[2] Police entered the house, conducted a sweep, and saw what appeared to be drugs in the basement. Police thereafter obtained a search warrant and seized over two thousand pounds of marijuana from the basement.

The drug trafficking organization used several methods for transporting drug sale proceeds to pay for marijuana and other expenses. First, associates flew across the country carrying large amounts of hidden cash. Second, tractor trailer drivers transported

---

[1] We recite only facts relevant to this appeal. To assess Womack's sufficiency-of-the-evidence-challenge, we view the evidence presented at trial in the light most favorable to the Government. See United States v. Fallon, 61 F.4th 95, 120 (3d Cir. 2023).

[2] At different times, Baskerville told police that the house belonged to his grandmother, his mother, and then himself, but his identification did not list the searched property's address. Although Womack claims that he had a key to unlock the padlock on the front door, and the Government conceded that Baskerville had a key for the padlock, there was no evidence adduced about the key during the suppression hearing.

large amounts of cash and marijuana to conspirators.  In fact, Womack himself traveled to Arizona to monitor tractor trailer shipments of drugs and cash and to Virginia to deliver cash to a driver.  Third, the organization recruited people to open bank accounts and funneled drug sale proceeds through those accounts.  Associates around Philadelphia would deposit the proceeds into these accounts and other associates in Arizona would withdraw the cash from them.  One such account reflected several deposits and withdrawals of $8,000 or less.  Phone records showed that Womack communicated with conspirators who managed these account transfers.  These records showed that Womack spoke with one of these conspirators over 200 times during a several week period.

Womack and others were indicted for conspiracy to distribute marijuana and conspiracy to commit money laundering.  Before trial, Womack moved to suppress the drugs seized from the Philadelphia residence, claiming that the initial, warrantless entry into and sweep of the premises violated the Fourth Amendment.  The District Court denied the motion, holding that Womack lacked Fourth Amendment standing to challenge the search, and that even if he had standing, the entry and sweep were justified. After trial, a jury found Womack guilty of conspiracy to distribute marijuana and conspiracy to commit money laundering.

Womack appeals.

## II[3]

### A

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

We first address Womack's challenge to the District Court's order denying his motion to suppress evidence discovered during the search of the Philadelphia residence.[4]

To challenge a search, a defendant must have Fourth Amendment standing, that is the search must have violated "his own Fourth Amendment rights." United States v. Stearn, 597 F.3d 540, 551 (3d Cir. 2010). To do so, he must demonstrate that he had both a subjective and objective expectation of privacy in the area searched. United States v. Nagle, 803 F.3d 167, 176 (3d Cir. 2015). In certain circumstances, a person may have a reasonable expectation of privacy within another's home. Minnesota v. Olson, 495 U.S. 91, 98 (1990). For example, an overnight guest has a reasonable expectation of privacy in the area where he is staying, but a visitor "who is merely present with the consent of the householder" has no such expectation and hence no Fourth Amendment standing. Minnesota v. Carter, 525 U.S. 83, 90 (1998).

Womack fails to show that he had a subjective expectation of privacy within the searched home or that any such expectation was objectively reasonable.[5] The suppression hearing record does not show (1) Womack's relationship with the property owner or with someone with a possessory interest in the property, (2) how long he had

---

[4] When considering an order denying a suppression motion, "we review a district court's factual findings for clear error" and its legal conclusions de novo. United States v. Goldstein, 914 F.3d 200, 203 n.15 (3d Cir. 2019) (quoting United States v. Katzin, 769 F.3d 163, 169 n.4 (3d Cir. 2014) (en banc)).

[5] The Government did not forfeit its challenge to Womack's Fourth Amendment standing as it raised this challenge in a post-suppression-hearing submission before the District Court ruled and at a time when Womack could have responded to the argument. See United States v. Dowdell, 70 F.4th 134, 141 (3d Cir. 2023).

4

been at the home, or (3) whether he had previously visited or stayed overnight at the home before the search—factors that may have shown he had a reasonable expectation of privacy in the searched premises.[6]  Instead, the evidence revealed that Womack was merely present at the home for drug-related activities, which is insufficient to establish Fourth Amendment standing.[7]  See Carter, 525 U.S. at 90-91 (holding respondents lacked a privacy interest in an apartment where they were present for a few hours for business purposes); see also United States v. Perez, 280 F.3d 318, 337-38 (3d Cir. 2002) (similar).[8]  The District Court therefore properly held that Womack lacked Fourth Amendment standing to challenge the search.

B

We next consider Womack's claim that the Government constructively amended the money laundering conspiracy charge in the indictment by presenting evidence and argument about bank transactions not mentioned in the indictment.[9]  An indictment is constructively amended when evidence or argument modifies "essential terms of the

---

[6] As the District Court found, Womack was likely not an overnight guest because the house was under construction.

[7] Contrary to Womack's claim, United States v. Jeffers, 342 U.S. 48 (1951) is inapt.  There, the respondent was held to have standing to challenge the search of another's room because the respondent had been given a key and permission to use that room and had entered the room on various occasions.  Jeffers, 342 U.S. at 50, 52.  None of those facts are present here.

[8] Womack's suggestion that he had a privacy interest in the drugs is unavailing because "legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest."  United States v. Salvucci, 448 U.S. 83, 91 (1980).

[9] Womack failed to raise his constructive amendment argument before the District Court, so we review it for plain error.  See United States v. Salahuddin, 765 F.3d 329, 337 (3d Cir. 2014).

charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment . . . actually charged." United States v. Centeno, 793 F.3d 378, 389-90 (3d Cir. 2015) (quoting United States v. Daraio, 445 F.3d 253, 259-60 (3d Cir. 2006)).

There was no constructive amendment here. Womack was charged with and convicted of the same offense: conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h). To prove such a conspiracy, the Government had to establish: (1) "an agreement between two or more persons to launder money;" and (2) that Womack "knowingly became a member of the conspiracy." United States v. Fallon, 61 F.4th 95, 115 (3d Cir. 2023). "The agreement must be one that, if completed, would satisfy the elements of the underlying substantive offense"—here, promotional and concealment money laundering.[10] Id.

Proof of an overt act in furtherance of the conspiracy is not an element of the crime.[11] Whitfield v. United States, 543 U.S. 209, 219 (2005). Accordingly, the

---

[10] Promotional money laundering requires showing: (1) the defendant knowingly conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of specified unlawful activity; (3) the defendant knew that the funds involved were proceeds of some form of unlawful activity; and (4) the defendant engaged in the financial transaction with the intent to promote the carrying on of specified unlawful activity. 18 U.S.C. § 1956(a)(1)(A)(i); United States v. Omoruyi, 260 F.3d 291, 294 (3d Cir. 2001). The elements of concealment money laundering are identical except the fourth element requires that the defendant know "the transactions were designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i); Omoruyi, 260 F.3d at 294-95.

[11] "An overt act is any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy." United States v. McKee, 506 F.3d 225, 243 (3d Cir. 2007).

6

Government did "not modify 'the elements of the crime charged,'" United States v. Vosburgh, 602 F.3d 512, 534 (3d Cir. 2010) (citation omitted), where it offered proof at trial of a specific money laundering method (e.g., depositing proceeds in third party bank accounts) that was not alleged in the indictment. See United States v. Rosario-Pérez, 957 F.3d 277, 289 (1st Cir. 2020) (holding that offering "proof of an overt act relevant to the [drug] conspiracy" did not constructively amend the indictment as an overt act was not an element of the conspiracy offense). Thus, there was no constructive amendment. See Vosburgh, 602 F.3d at 532.

## C[12]

The evidence adduced at trial proved that Womack conspired to commit both promotional and concealment money laundering and so his assertion that the evidence was insufficient fails.[13]

Turning first to promotional money laundering, the evidence showed that Womack's coconspirators agreed to engage in transactions with "an intent to promote the carrying on" of drug trafficking. United States v. Omoruyi, 260 F.3d 291, 294 (3d Cir.

---

[12] Because Womack failed to raise his sufficiency-of-the-evidence argument before the District Court, we review it for plain error. United States v. Jabateh, 974 F.3d 281, 300 (3d Cir. 2020). Plain error warrants reversal when the insufficiency of evidence "resulted in a fundamental miscarriage of justice," which "occurs only where the record is devoid of evidence pointing to guilt." United States v. Castro, 704 F.3d 125, 138 (3d Cir. 2013) (internal quotation marks and citations omitted). To determine whether this standard is met, "we examine the totality of the evidence, both direct and circumstantial," and "credit all available inferences in favor of the [G]overnment." United States v. Sparrow, 371 F.3d 851, 852 (3d Cir. 2004) (internal quotation marks and citation omitted).

[13] Womack challenges only proof of the fourth elements of promotional and concealment money laundering.

2001); 18 U.S.C. § 1956(a)(1)(A)(i). The "intent to promote" element is satisfied if transactions were intended to advance drug trafficking.[14] See United States v. Conley, 37 F.3d 970, 979 (3d Cir. 1994). The evidence demonstrated that conspirators used drug proceeds to pay for marijuana and other expenses. See United States v. Bansal, 663 F.3d 634, 646 (3d Cir. 2011) (holding the promotional element proven where defendants used proceeds from selling prescription-less drugs to buy controlled substances). The evidence also established that Womack was aware that the funds involved were derived from drug sales as he monitored cash payments and drug shipments and delivered cash to a tractor trailer driver associated with the organization.

As for concealment money laundering, the evidence showed that Womack's coconspirators agreed to and in fact engaged in transactions that were "designed in whole or in part to conceal" the nature and source of the drug trafficking proceeds. Omoruyi, 260 F.3d at 294-95; see 18 U.S.C. § 1956(a)(1)(B)(i). The evidence revealed that the organization took various steps to disguise the nature and source of its proceeds. Conspirators recruited third parties to open bank accounts, deposited funds in these accounts, rather than in accounts held under the conspirators' names, and withdrew or

___

[14] Womack relies on Regalado Cuellar v. United States, 553 U.S. 550 (2008), and United States v. Santos, 553 U.S. 507 (2008), to argue that "promote" must mean "grow, expand, or enhance the prosperity" of illegal activity. Appellant Br. 46. His argument fails. First, neither Cuellar nor Santos supports his position. Cf. United States v. Demarest, 570 F.3d 1232, 1241-42 (11th Cir. 2009) (rejecting a defendant's reliance on these cases as Santos's narrow holding did not apply, and Cuellar had no impact on his promotional money laundering conviction). Second, even if we applied his interpretation (which he acknowledges lacks support in our precedent), a jury could reasonably infer from the evidence that conspirators used the at-issue transactions to grow and expand their drug business.

deposited no more than $8,000 cash at a time, likely to avoid bank reporting requirements, and to conceal the nature and source of the funds. See, e.g., United States v. Brown, 553 F.3d 768, 787 (5th Cir. 2008) (holding concealment money laundering proven where "transactions were in cash" and "deposits were below ten thousand dollars so as to avoid" bank reporting requirements that may "lead to unwanted attention"). Using third parties' bank accounts and "structuring the transaction[s] in a way to avoid attention" provided the jury a basis to infer an intent to conceal. Fallon, 61 F.4th at 117 (internal quotation marks and citation omitted). Moreover, the jury could reasonably infer that Womack knew about these transactions from phone records showing that he frequently contacted conspirators who managed the account transfers.

Thus, the evidence was sufficient to prove that Womack conspired to commit both promotional and concealment money laundering.

III

For the foregoing reasons, we will affirm.

9