## BLEIER v. CROUSE, SUPERINTENDENT.

*Juvenile court — Jurisdiction of dependent — Sections 1647 and 1648, General Code — Citation to parent unnecessary, when — Remedy of parent — Application to juvenile court — Habeas corpus does not lie, when.*

1. Service of citation upon the parent of a child in a proceeding under Sections 1647 and 1648, General Code, is not a condition precedent to jurisdiction over the child.
2. Such parent, who has not been cited, must seek his remedy in the first instance in the juvenile court, of which the child is a ward.
3. An action in *habeas corpus* in the court of common pleas cannot be maintained to secure the custody of a child committed by the juvenile court as a dependent.

(Decided June 28, 1920.)

ERROR: Court of Appeals for Hamilton county.

*Mr. W. F. Fox,* for plaintiff in error.

*Mr. John C. Hermann,* for defendant in error.

SHOHL, P. J. This is a proceeding in error to review the judgment of the court of common pleas in dismissing a petition in *habeas corpus.*

The action was brought by Charles Bleier, who alleges that he is the father of three minor children, under the age of sixteen years, seeking to regain their custody from The Children's Home of Cincinnati, to which they were committed by the juvenile court. The petition alleges that the children are illegally restrained and deprived of their liberty, without any legal authority, by Meigs V. Crouse, superintendent of the Children's Home; that they were not detained for any criminal or supposed criminal matter; and that neither they nor the petitioner have consented to their restraint and detention, and petitioner has frequently demanded of the defendant that he surrender the children, but that he has refused to comply with such demand. Plaintiff alleges that he is able, anxious and willing to care for them.

Meigs V. Crouse, as superintendent of the Children's Home, filed an elaborate answer or return, in which he challenged the sufficiency of the petition and the jurisdiction of the court. He then denied all of the allegations of the petition (fourth defense), and by way of fifth defense set forth in detail the facts pertaining to the commitment and detention of the three children, which in brief were that for some time prior to and on the 21st day of January, 1914, the petitioner herein, and one Mary Bleier, who was the mother and had the custody of the minors, were living together as husband and wife, in Hamilton county, Ohio; that the petitioner and said Mary Bleier refused to earn an honest

living, or work, but lived off the charity of various charitable institutions in the city, with the natural result that the children were poorly and improperly clothed and fed, abused and beaten, until on the 21st day of January, 1914, a petition was filed, as provided by law, in the juvenile court, representing that the said children (William, then a boy of nine years; Henry, then a boy of eight years; and Charles, then a boy of one year of age) were dependent persons, and asking the court to inquire into the alleged dependency of those children; that a summons was duly issued commanding the said Mary Bleier to appear before the judge of the juvenile court with those children, and that at that time the said Mary Bleier with the petitioner herein did appear and request that the proceedings be continued, but that making no further attempt to properly provide and care for the children they were again cited to appear before the court, which they did, on the 16th day of May, 1914, at which time, after full investigation and consideration, the court found the allegations in said complaint to be true and that the children were dependent, and ordered them to be committed to the care, custody, maintenance and control of the said The Children's Home of Cincinnati, and to remain under the care and control of said home until they severally arrived at the age of twenty-one (21) years; that a certified copy of the commitment (Exhibit "A") was duly attached to the answer, which commitment was recognized and designated as a temporary commitment; that the children remained in the care of the Children's Home under that temporary commitment for more than a year there-

after; that shortly after the commitment, Mary B. Bleier, the mother, left Cincinnati and went to Chicago, and that is the last heard of her; and that the petitioner remained in Cincinnati for a short time and called to visit the children at the home, when the superintendent and other officers pleaded with him to secure employment or to permit them to secure employment for him, so that he could properly support the three children, or at least, contribute to their support in the home, all of which the petitioner refused and neglected to do, and shortly after the commitment left the jurisdiction of the court and went to Chicago where he has been ever since.

The answer further alleges that after the children had been in the home for over a year they were permanently committed to the home by the juvenile court on the 26th day of May, 1915, and permanent orders of commitment were issued by the court marked Exhibits "B," "C" and "D"; that under the authority vested in the Children's Home it procured homes for each of said children and they are now in the care and custody of good parents and are receiving proper care and education; that two of the children, Henry and Charles, have been duly and regularly adopted by foster parents, through proper proceedings, as provided by the statutes, with the consent of the Children's Home and the juvenile court, and that the other child, William Bleier, is likewise in a good and proper home and his foster parents are ready and desire to adopt him through proper proceedings; that the petitioner is not ready and able to properly care for the children and that he seeks only to find out their

whereabouts, which would be a serious detriment to the children, in that it would unsettle them in their new homes and in their love and respect and loyalty for their foster parents, and that the experience of all institutions having the care and custody of dependent or delinquent children shows that information such as is sought in this case, in practically all instances, is used by the parents for improper purposes, and, at best, seriously interferes with the happiness and contentment of the children, and is therefore against public policy; and that said commitments were never set aside, nor attacked by this petitioner or any other person, and are in full force and effect.

The petitioner thereupon filed what he entitled a motion to quash the return and to require the defendants to set forth where the children were. The court based the judgment of dismissal solely upon the petition and the commitments attached to the answer. The intention of both parties apparently was, however, that the motion be regarded substantially as a motion for judgment on an agreed state of facts. See *In re Clayton,* 13 O. D., 546. No technical question is raised here, and the court will consider the case on the merits.

The case raises important questions as to the construction and effect of the juvenile court statutes. Section 1648, General Code, provides that upon the filing of a complaint a citation shall issue requiring such minor to appear, and the parents or guardian, or other person, if any, having custody or control of the child, or with whom it may be, to appear with the minor, at a time and place to be stated in the citation.

The plaintiff in error contends that no citation was served upon him, and, that, therefore, he was not a party to the proceedings, and has not had a day in court. The contention is that the judgment of the court, while perhaps conclusive as between the state and the child, does not determine nor conclude the parent. Defendant in error replies that there is no averment of such facts in the petition. We do not rest our decision upon any technical question of the manner in which such issue must be raised.

It is a well-settled principle of law that no one is bound by a personal judgment or order of a court, who is not made a party thereto, and has not had a day in court, except parties privy in interest. (*In re Sharp,* 15 Idaho, 120; 18 L. R. A., N. S., 886.) The petitioner is entitled to a day in court to have a determination of his rights regarding the custody of his children. *House of Refuge* v. *Ryan,* 37 Ohio St., 197; *Farnham* v. *Pierce,* 141 Mass., 203, and *Milwaukee Industrial School* v. *Supervisors,* 40 Wis., 328.

How then is he affected by the commitment of his children by the juvenile court?

Proceedings under the juvenile laws are modern and do not coincide with any proceeding known to the old law. See *State, ex rel. Fortini,* v. *Hoffman, Judge,* 12 Ohio App., 341. The fundamental principle of the juvenile acts is conservation of the child. In the exercise of the power of *parens patriae* the legislature has established the juvenile court and delegated to it certain of its powers. There is no authority to support the contention that notice to the parent is a condition prerequisite to

jurisdiction of the juvenile court over the child. An examination of the juvenile law as a whole leads us to the conclusion that the jurisdiction of the court attaches to the child without regard to the citation of the parent. This is so, not because the parent has forfeited any of his legal rights, but because in such case the police power of the state is paramount. See *House of Refuge* v. *Ryan,* 37 Ohio St., 197, 203. When proceedings are regularly had in the juvenile court and there is a finding that the child is dependent, under Section 1643, General Code, it becomes a ward of the court. In the interest of the child and in the interest of society the court can commit its custody to strangers, or to an institution for its moral training and education. (*Children's Home of Marion County* v. *Fetter et al.,* 90 Ohio St., 110, 127.) The commitment by the juvenile court of Bleier's children as dependents does not, however, preclude him from asserting any right to their custody and care, and he may have a day in court to determine his rights. It does not follow that he may maintain *habeas corpus,* nor that he can select his own court. If a parent is improperly deprived of the custody of his child by the action of the juvenile court, he has his remedy under the juvenile act, but by a proper proceeding in that court. The jurisdiction of that court, when it attaches, is a continuing jurisdiction, and no other court has authority to interfere in an independent proceeding with the custody of the child thus entrusted by law to the court. (*In re Crist,* 89 Ohio St., 33.) The authorities show that after a child has become a ward of the juvenile court, the court has authority to vacate its original

order, or modify the same, or make such further and additional orders in relation thereto as may be just and proper.

The proper forum for a parent who is not satisfied with the order of the juvenile court is the juvenile court itself, and such court will hear his application. *State, ex rel. Tailford,* v. *Bristline,* 96 Ohio St., 581. See also *Cleveland Protestant Orphan Asylum* v. *Soule,* 5 Ohio App., 67.

Procedure in *habeas corpus* was specifically authorized under the statutes of Ohio existing at the time of the case of *House of Refuge* v. *Ryan, supra.* There was no other judicial remedy provided in Massachusetts and Wisconsin, as shown by the cases above referred to. The remedy now provided by the Ohio law is by an application to the juvenile court to modify its findings.

If the adoption proceedings have now rendered it impossible for the court to restore the children to petitioner, the responsibility rests not with the juvenile court, but with the parent who has delayed for so many years in asking for their restoration. If the laws which provide for the welfare of children generally and society as a whole operate to cause possible hardship in an individual case, that circumstance alone will not undo the laws which society has established for its own protection and betterment.

The authority to commit the children to the Children's Home is granted by Section 1653, General Code.

The determination by the court of common pleas that it was without jurisdiction to determine the

plaintiff's right to the custody of the children that had become wards of the juvenile court was correct.

*Judgment affirmed.*

HAMILTON and CUSHING, JJ., concur.